**Robert E. BAKER, Plaintiff on behalf of himself and others similarly situated,**

**v.**

**CALIFORNIA LAND TITLE COMPANY, Defendant.**

**No. 71-2926-JWC.**

United States District Court,
C. D. California.

May 1, 1972.

Andersson, Litt, Lund & Tockman, El-nora Beth Livezey, Los Angeles, Cal., for plaintiff.

Tremaine, Shenk, Stroud & Roberts, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

CURTIS, District Judge.

The plaintiff was discharged from his employment for wearing long hair. He contends that since women employees are permitted to wear their hair long, he

is being discriminated against because of his sex, in violation of Civil Rights Act of 1964, Title 42 U.S.C. § 2000e–2(a). He brings this class action on behalf of himself and "past, present and future employees" similarly discriminated against. He seeks reinstatement and back pay for himself and all members of his class.

Defendant first attacks this court's subject matter jurisdiction upon the ground that the complaint fails to allege mandatory exhaustion of state remedies.

■ Title 42 U.S.C. § 2000e–5(b) requires the charging party to commence his proceeding with the state agency, where one exists (in California the F.E. P.C.), and provides that he may not file with the E.E.O.C. before 60 days have expired or until the state proceeding shall have been earlier terminated. There is no allegation in the complaint that this was done. However, in plaintiff's reply memorandum he has attached exhibits which indicate that there was, in fact, a compliance with this section and since the authenticity of these exhibits is not controverted, and treating the motion to dismiss as a motion for summary judgment, I hold that jurisdictional requirements have been met and that this court does have subject matter jurisdiction.

■ I further hold that this is not a proper class action and order that it may not proceed as such. Although the plaintiff defines the Class in broad, sweeping terms in his complaint, in his memorandum of points and authorities he construes his own pleadings as defining a class limited to the employees of the defendant. So limited, it does not appear to be so large a class as would make joinder impractical.

The defendant moves to dismiss upon the ground that the complaint fails to state a claim upon which relief can be granted. Title 42 U.S.C. § 2000e–2(a)(1) provides in relevant part as follows:

"It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex . . . ."

I do not consider the applicability of Title 42 U.S.C. § 2000e–2(e), which permits discrimination, otherwise prohibited, on the basis of sex where "bona fide occupational qualifications" are involved. Such issue, is a matter of defense and is not presently before us.

I assume, since no contention to the contrary has been made, that the defendant, like other private employers, may make general, non-discriminatory rules with respect to the grooming and the attire of its employees. Although the complaint alleges no specific rules, I assume that the defendant has rules, either express or implied, which prohibit male employees from wearing their hair long while permitting female employees to wear their hair long. I assume, further, that all rules such as have been made are enforced with equal vigor upon all employees, male and female alike.

The question, then, before us is simply: Can a private employer require male employees to adhere to different modes of dress and grooming than are required of females without engaging in an unfair employment practice within the meaning of section 2000e–2(a)(1)? I hold that an employer may do so.

Section 2000e–2(a)(1) is part of Title VII of the Civil Rights Bill of 1964. The purpose of Title VII, as stated by the House Report accompanying the bill, is to "eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment based on race, color, religion, or national origin." (1964 U.S.Code Cong. and Admin. News, p. 2401). After the issuance of the House Report on November 20, 1963, the ban on discrimination based on

sex was added to the Act by an amendment offered during the debate in the House by Representative Smith of Virginia. 110 Cong.Rec. 2577.

Further information on the purposes of Title VII is set forth in the separate views of other members of the House of Representatives published in conjunction with the House Report. The views of Representative McCulloch, et al., emphasize that "testimony supporting the fact of discrimination in employment is overwhelming", and that statistical studies show that nonwhites have a much higher rate of unemployment than whites and that they enjoy a much lower median annual wage than whites. (U.S.Code Cong. and Admin. News, pp. 2513–2514). The statement of views further asserts that protecting civil rights in voting, education and public accommodations is a "shallow victory" if discrimination in employment practices continues, that "[t]he failure of our society to extend job opportunities to the Negro is an economic waste", and that the "primary purpose" of the Equal Employment Opportunity Commission "is to make certain that the channels of employment are open to persons regardless of their race and that jobs in companies or membership in unions are strictly filled on the basis of qualification." (1964 U.S. Code Cong. and Admin.News, pp. 2513, 2515 and 2516).

■ Thus the primary purpose of Title VII is to protect minorities from economic oppression. Expanded by the Smith Amendment to also prohibit discrimination on the basis of sex, the title provides the assurance that no person because of his race, color, religion, sex or national origin shall be deprived of equal occupational opportunities, such as an equal right to available employment, equal pay for equal work, and equal working conditions. It was never intended that it be used to interfere in the promulgation and enforcement of the general rules of employment, deemed essential by an employer, where the direct or indirect economic effect upon the employee was nominal or non-existent. In any event, it certainly should not be used, as the defendant asks us to do here, to compel the continued employment of an employee who persists in affecting some whim of style which his employer deems to be inappropriate to the business image which the employer is attempting to create.

■ "Discrimination" is a term well understood in the law. It is in general a failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored. Franchise Motor Freight Association v. Seavey, 196 Cal. 77, 81, 235 P. 1000, 1002. Further, it has been said that conduct which meets the requirements of equal protection, and which is thus nondiscriminatory,

"[D]oes not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary." Cipriano v. City of Houma, 286 F.Supp. 823, 825 (D.C.E.D.La. 1968), citing Walters v. City of St. Louis, Mo., 347 U.S. 231, 237, 74 S.Ct. 505, 98 L.Ed. 660 (1954).

While the Civil Rights Act has declared that sex is not a fair basis for permitting or withholding employment opportunities, the fact still remains that custom and tradition have always recognized and accepted differing styles of dress and grooming based upon sex. To some extent these distinct styles are the result of physiological and anatomical differences, but perhaps more often the differences have been based upon an attempt to further glamorize sexual differences.

■ This court is not concerned with the wisdom of the customs in question or the personal appearance rules which

result from them. I merely hold that a private employer may make reasonable rules respecting the grooming of his employees as a condition for employment, and the fact that rules differ in minor detail as between the sexes is not "discrimination" within the meaning of § 2000e–2(a)(1).

The authorities in this area are scant and divided. A distinguished member of this court has held to the contrary. See Donohue v. Shoe Corporation of America, Inc., et al., C.D.Cal., 337 F. Supp. 1357. The Equal Employment Opportunities Commission has likewise held that a refusal to hire a male because of the length of his hair, when women who wear their hair at a similar length are hired, constitutes a violation of the Act. Decision No. 71–1529, 1 C. C.H. Employment Practices Guide, § 6231, Apr. 2, 1971. The court in Roberts v. General Mills, Inc., D.C., 337 F. Supp. 1055, came to the same conclusion. I find support, however, in the case of Dodge v. Giant Foods, Inc., 3 F.E.P. Cases 374, Apr. 16, 1971.

 With due deference to the decision of my brother on this court and the decisions of the Commission and for reasons which I have already stated, I believe that the Civil Rights Act of 1964 was never intended to permit an employee to set in motion the state and federal equal employment opportunities machinery, with all of its vast implications, merely because he wishes to wear his hair longer than the company rules prescribe, where the rule is reasonable and where, although differing in some particulars from that pertaining to women, it is based upon a fair and rational distinction, and it is part of general personal appearance rules applicable to all employees.

This action is, therefore, dismissed on the ground that the complaint fails to state a claim upon which relief can be granted.

The attorneys for defendant shall prepare findings of fact, conclusions of law and judgment.