482 F.2d 535
 5 Fair Empl.Prac.Cas. 1329,
6 Fair Empl.Prac.Cas. 830,
6 Empl. Prac. Dec. P 8701,
6 Empl. Prac. Dec. P 8936
Alan WILLINGHAM, Plaintiff-Appellant,
v.
MACON TELEGRAPH PUBLISHING COMPANY, Defendant-Appellee.
 No. 72-2078.
 United States Court of Appeals,
Fifth Circuit.
 June 28, 1973.
Rehearing and Rehearing En Banc Granted Sept. 5, 1973.
 
 Charles R. Marchman, Jr., Macon, Ga., Edward L. Baety, Field Atty., EEOC, Atlanta, Ga., for plaintiff-appellant.
 Charles L. Reischel, EEOC, Washington, D. C., Wayne S. Hyatt, Atlanta, Ga., for Roger D. Gravette, amicus curiae.
 E. S. Sell, Jr., Macon, Ga., for defendant-appellee.
 John Bacheller, Jr., Atlanta, Ga., for Rollins, Inc., amicus curiae.
 Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 This case presents the question whether an employer's grooming code requiring male job applicants to adhere to a hair style different from that required of female job applicants constitutes sex discrimination in violation of section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2. The district court, 352 F.Supp. 1018, held that Title VII did not prohibit an employer from refusing to hire a male applicant because of his hair length while at the same time not imposing similar limits on the hair length of female applicants. We reverse and remand.
 
 I.
 
 2
 Alan Willingham, the plaintiff-appellant, is a twenty-two year old white male and an artist by trade. On July 28, 1970, Willingham applied for the position of display or layout artist in the retail advertising department of the Macon Telegraph Publishing Company, a newspaper publishing company in Macon, Georgia. Willingham contended that he was qualified for the position because he had passed all tests administered to him by the company and had prior experience as a copy layout artist with two other companies. The company, however, refused to hire him.
 
 
 3
 On July 30, 1970, Willingham filed a complaint with the Equal Employment Opportunity Commission alleging that the company had violated section 703 of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2 by discriminating in employment on the basis of sex. Willingham asserted that the sole reason for the company's refusal to hire him for the position of layout artist was his shoulder length hair. Willingham argued that since the company imposed no restrictions on the hair length of female applicants, the company's action constituted sex discrimination. After investigating the complaint, the Commission found that there was reasonable cause to believe that the company had violated section 703 of the Act by refusing to hire the plaintiff. The Commission advised Willingham that he was entitled to file suit.
 
 
 4
 On December 17, 1971, Willingham initiated the present action in the district court and reiterated his contention that he had been the victim of sex discrimination in violation of section 703 of the Civil Rights Act of 1964 and the Civil Rights Act of 1870, 42 U.S.C. Secs. 1981, 1983. The company responded by filing a motion to dismiss the complaint for failure to state a cause of action and attached affidavits to the motion. The company asserted that it required applicants for employment and employees who come in contact with the general public to be neatly dressed and groomed in accordance with the standards customarily accepted in the business community. The plaintiff's hair length, the company contended, would be offensive to the company advertisers and customers and would injure the company's business and good will in the community. Through various affidavits the company asserted that, at the time of Willingham's application, the community had been negatively influenced by a "pop festival" in the area attended by several hundred thousand long haired individuals. The company further argued that its action in refusing to hire Willingham did not constitute sex discrimination.
 
 
 5
 The district court treated the company's motion to dismiss as one for summary judgment and granted time to allow both parties to submit additional affidavits and other supporting evidence. Willingham then filed a motion for partial summary judgment.
 
 
 6
 On April 17, 1972, the district court rendered its decision granting summary judgment in favor of the company. The court held that even if all the allegations in the plaintiff's complaint were taken as true, the company was entitled to judgment as a matter of law since the Civil Rights Acts were not intended to deprive employers of their "fundamental right . . . to proscribe reasonable grooming standards which take cognizance of societal mores." The plaintiff appealed in forma pauperis.
 
 II.
 
 7
 The principal issue on appeal is whether the company's grooming code for hair length constitutes sex discrimination in violation of section 703 of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2.[1] Section 703 provides, in pertinent part:
 
 
 8
 (a) It shall be an unlawful employment practice for an employer-
 
 
 9
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .; or
 
 
 10
 (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . 42 U.S.C. Sec. 2000e-2.
 
 
 11
 The company contends that its grooming code does not discriminate on the basis of sex because both sexes are treated equally: all applicants and employees are required to groom their hair according to the prevailing community standard. It is argued that the discrimination, if any, is between long and short haired males and not between males and females. We disagree.
 
 
 12
 In enacting section 703, Congress intended to insure equal access to the job market for both men and women. Diaz v. Pan American World Airways, Inc., 5 Cir. 1971, 442 F.2d 385, cert. denied 404 U.S. 950, 92 S.Ct. 275, 30 L. Ed.2d 267. In essence, this means that "persons of like qualifications must be given employment opportunities irrespective of their sex". Phillips v. Martin Marietta Corp., 1971, 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613. Section 703, therefore, is not limited to situations in which the employer's discriminatory employment practice is based solely on sex[2] but extends to all differences in the treatment of men and women resulting from sex stereotypes.[3] Sprogis v. United Air Lines, 7 Cir. 1971, 444 F.2d 1194, cert. denied 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543. An employment practice may be discriminatory even if it "adversely affects only a portion of the protected class." Id. at 1198. In Phillips v. Martin Marietta Corp., supra, for example, the Supreme Court held that the defendant company's policy of not accepting job applications from women with pre-school age children discriminated on the basis of sex. The Court stated that Title VII did not permit "one hiring policy for men and another for women-each having preschool age children." 400 U.S. at 544, 91 S.Ct. at 498. Similarly, in Sprogis v. United Air Lines, supra, the court held that an employer's rule requiring that stewardesses be unmarried, while the same policy was not applied to stewards, constituted sex discrimination in violation of Title VII. The court noted that section 703 was intended "to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes". 444 F.2d at 1198.
 
 
 13
 Applying this standard to the present case, we find that a grooming code requiring different hair lengths for male and female job applicants discriminates on the basis of sex within the meaning of section 703. Such a code treats applicants differently because of a sex stereotype: only males are prohibited from wearing their hair long. Section 703 does not permit one standard for men and another for women, where both are similarly situated. Other courts considering similar grooming codes have so held. See Aros v. McDonnell Douglas Corp., C.D.Cal.1972, 348 F.Supp. 661; Donohue v. Shoe Corp. of America, Inc., and Retail Clerks Union, Local 324, C.D.Cal.1972, 337 F.Supp. 1357; Roberts v. General Mills, Inc., N. D.Ohio 1971, 337 F.Supp. 1055; Rafford et al. v. Randle Eastern Ambulance Service, S.D.Fla.1972, 348 F.Supp. 316, (dictum). Cf. Crews v. Cloncs, 7 Cir. 1970, 432 F.2d 1259. Contra Dodge v. Giant Foods, Inc., D.C.1971, 3 EPD p 8184; Baker v. California Land Title Co., C.D.Cal.1972, 349 F.Supp. 235; Boyce v. Safeway Stores, Inc., D.D.C. 1972, 351 F.Supp. 402.
 
 
 14
 The EEOC has also determined that a refusal to hire a male because of his hair length, when women who wear their hair at a similar length are hired, constitutes a violation of section 703. Decision No. 71-1529, 3 FEP Cases 1253; 29 C.F.R. Sec. 1604.1(a). In general, its regulations provide that "so long as sex is a factor in the application of the [employer's] rule, such application involves a discrimination on the basis of sex." 29 C.F.R. Sec. 1604.3(a). The EEOC's interpretation of the Act is entitled to great deference. See Griggs v. Duke Power Co., 1971, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158; Diaz v. Pan American World Airways, Inc., supra.
 
 
 15
 Of course, it is possible that the company may justify its grooming code as a bona fide occupational qualification. See Weeks v. Southern Bell Telephone & Telegraph Co., 5 Cir. 1969, 408 F.2d 228. The district court did not expressly consider this issue, which is a disputed issue of material fact that cannot be resolved on summary judgment. The district court's opinion and the appellee's briefs, however, are devoted in large part to the community's reaction to long hair, a matter more pertinent to the bfoq defense than the question whether there was discrimination. We therefore remand the cause for further consideration consistent with this opinion.
 
 
 16
 Reversed and remanded.
 
 SIMPSON, Circuit Judge (dissenting):
 
 17
 Respectfully, I dissent.
 
 
 18
 The appellant was not refused employment by reason of discrimination, lawful[1] or otherwise, because of his sex. 42 U.S.C., Sec. 2000e-2(a). The appellee publishing company refused to hire him[2] in its retail advertising department because his personal appearance, primarily his shoulder length hair, was in the considered judgment of appellee's executive officers likely to offend community standards in the business community of Macon, Georgia, and environs. The position involved, that of advertising copy layout artist, required continuing contact with advertisers. The feared resultant unfavorable effect upon business relationships of the appellee with its actual and potential advertisers, the lifeblood of a newspaper publishing enterprise, was a matter for legitimate concern on the part of those entrusted by the company's stockholders with the success of that enterprise. It was a matter as to which they should have been free to exercise their best business judgment. Better than any group of government officials in Washington, D. C., better even than any panel of federal appellate judges assembled in New Orleans, Louisiana, the responsible officials of the appellee know the business climate[3] of Macon, Georgia.
 
 
 19
 The decision below is reported as Willingham v. Macon Telegraph Publishing Co., D.C.M.D.Ga.1972, 352 F.Supp. 1018. I find myself in strong and complete accord with the views expressed by Judge Bootle in his memorandum opinion:
 
 
 20
 "Plaintiff would characterize the application of different grooming standards for men and women by an employer as 'invidious discrimination' based on sex. 'If there are different hair length standards applied to men and women (e.g., women may wear long hair while men may not), this is the type of invidious discrimination prohibited by the Act.' (42 U.S.C. Sec. 2000e).
 
 
 21
 "Plaintiff's theory, if viewed abstractly, would seem to possess a semblance of logic. However, all too often theories which may seem to be reasonable and logical when viewed alone or in the abstract prove to be highly artificial once they are exposed to everyday realities and are measured by prevailing standards of common sense. Such is the case here.
 
 
 22
 "What the Act invoked by plaintiff precludes is discrimination in employment opportunities and conditions of employment motivated by sexual considerations. What plaintiff fails to realize is that he is not precluded from employment opportunities because of his sex, nor would it appear that such is the case with any other male or female applicant. From all that appears, equal job opportunities are available to both sexes. It does not appear that defendant fails to impose grooming standards for female employees; thus in this respect each sex is treated equally. Nor is it contended that defendant is employing grooming standards as a guise to justify refusing to employ males. What the defendant does require is that plaintiff conform to standards of appearance which the defendant feels are necessary to the conduct of his business. It is not unreasonable for an employer to expect differences in grooming between men and women-and such expectations are not indicative of sexual discrimination.
 
 
 23
 "If plaintiff's approach to Title VII be accepted and the application of different grooming standards to men and women be declared 'sexual discrimination', then the scope of the Civil Rights Act of 1964 is subject to expansion far beyond what must have been the purpose for its enactment. If this interpretation of the Act is expanded to its logical extent, employers would be powerless to prevent extremes in dress and behavior totally unacceptable according to prevailing standards and customs recognized by society. For example, if it be mandated that men must be allowed to wear shoulder length hair despite employer disfavor, because the employer allows women to wear hair that length, then it must logically follow that men, if they choose, could not be prevented by the employer from wearing dresses to work if the employer permitted women to wear dresses. While dresses on men would be a greater departure from the norm than is long hair, if plaintiff be correct, it cannot be gainsaid that to prevent men from wearing dresses while allowing women to do so would discriminate against the rights of men, and such discrimination would be present in the same manner as it would be present when men are prohibited by employers from wearing long hair. Continuing the logical development of plaintiff's proposition, it would not be at all illogical to include lipstick, eyeshadow, earrings, and other items of typical female attire among the items which an employer would be powerless to restrict to female attire and bedeckment. It would be patently ridiculous to presume that Congress ever intended such result, yet if plaintiff's interpretation of the Act be accepted, then it must follow that such extremes in behavior are also included within the coverage of the Act.
 
 
 24
 "It is neither unreasonable nor arbitrary to allow private employers to take cognizance of difference in grooming practices and dress customarily recognized by the sexes. Such recognition and rules predicated thereon do not constitute 'sexual discrimination.' No fundamental human right being here involved, an employer should not be coerced into countenancing, regardless of the consequences to his business, what society may frown upon.******
 
 
 25
 * * *
 
 
 26
 "Employers, like employees, have rights. This court, without a far more certain mandate from Congress than that contained in Title VII, will not be party to what it considers a ridiculous, unwarranted encroachment on a fundamental right of employers, i.e., the right to proscribe (sic) reasonable grooming standards which take cognizance of societal mores. As previously stated, this court interprets Title VII as prohibiting discrimination in employment opportunities and conditions of employment motivated by sexual considerations. The application of different grooming standards between the sexes does not, without more, constitute a denial of equal employment between the sexes. Further, such practice is not the application of unequal conditions of employment, unless, that is, the employer exacted grooming standards from one sex but allowed the other free rein. Where women as well as men are expected to conform to reasonably prescribed grooming standards there is no discrimination, even though the employer takes into consideration biological and cultural differences in drawing up the standards. An employer should be able to decline employment to a female applicant who shaves her head as clean as a billiard ball while not declining to hire a male applicant similarly groomed. A woman so groomed might well be an object of curiosity and derision, and, as such, counterproductive to goals of the employer. Similarly, the employer should be allowed to refuse employment to a male with locks and tresses falling to his shoulders while not denying employment to a female with similar type hair." 352 F.Supp. at 1020-1021.
 
 
 27
 As the majority opinion notes, the district courts which have considered application of Title VII to similar grooming standards have reached differing results.[4] But the cases involving grooming standards for employees in contact with the public exemplified by Baker v. California Land Title Company, C.D. Cal.1972, 349 F.Supp. 235, and Boyce v. Safeway Stores, Inc., D.C.D.C.1972, 351 F.Supp. 402,[5] carry persuasive weight on the factual situation in the case at bar. The thrust of the Baker holding is contained in this excerpt:
 
 
 28
 "Thus the primary purpose of Title VII is to protect minorities from economic oppression. Expanded by the Smith Amendment to also prohibit discrimination on the basis of sex, the title provides the assurance that no person because of his race, color, religion, sex or national origin shall be deprived of equal occupational opportunities, such as an equal right to available employment, equal pay for equal work, and equal working conditions. It was never intended that it be used to interfere in the promulgation and enforcement of the general rules of employment, deemed essential by an employer, where the direct or indirect economic effect upon the employee was nominal or non-existent. In any event, it certainly should not be used, as the defendant asks us to do here, to compel the continued employment of an employee who persists in affecting some whim of style which his employer deems to be inappropriate to the business image which the employer is attempting to create." 349 F.Supp. at 238.
 
 
 29
 The plaintiff in Boyce was a part-time food clerk who was discharged by Safeway Stores two months after being hired because his head and facial hair no longer conformed to company grooming standards as applicable to male employees in regular contact with the public. The summary judgment granted to Safeway Stores was undergirded by this reasoning:
 
 
 30
 "The present case has none of these obvious attributes of discrimination. Here is an employer who simply wished to have its personnel meet grooming standards which in its judgment will appeal to the largest number of its customers. No claims of violations of fundamental constitutional rights are made.
 
 
 31
 "The employer, moreover, is not attempting to stereotype its male and female employees, for the grooming standards allow for great variation in individual dress and appearance within the limits permitted. There is no proof that the standards have resulted in favoring or deterring men or women from employment. In short, the mild grooming rules are not shown to discriminate on the basis of sex any more than a condition of employment that requires males and females to use separate toilet facilities, or bars males but not females from wearing skirts." 351 F.Supp. at 403.
 
 
 32
 I would affirm the grant of summary judgment by the court below to the appellee Macon Telegraph Publishing Company, and would do so on the basis of the memorandum opinion of Judge Bootle, 352 F.Supp. 1018. I view that decision as amply supported by authority and unassailable in its logical conclusions.
 
 
 33
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 34
 Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.
 
 BY THE COURT:
 
 35
 A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,
 
 
 36
 It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 
 [1]
 The Civil Rights Act of 1870 is inapplicable. 42 U.S.C. Sec. 1981 applies to racial discrimination. Virginia v. Rives, 1880, 100 U.S. 313, 25 L.Ed. 667. 42 U.S.C. Sec. 1983, in terms, is directed toward state action. Guedry v. Ford, 5 Cir. 1970, 431 F.2d 660
 
 
 [2]
 Congress rejected an amendment to Title VII which would have so restricted the scope of section 703. 110 Cong.Rec. 2728 (1964)
 
 
 [3]
 This latter form of discrimination has been termed "sex plus" discrimination because it usually involves the classification of employees on the basis of sex plus one other characteristic. See Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1171-1172 (1971). Phillips v. Martin Marietta Corp., supra, and Sprogis v. United Air Lines, Inc., supra, are examples of "sex plus" discrimination
 The legislative history of Title VII indicates that a broad interpretation of discrimination was intended. For example, an interpretative memorandum submitted by Title VII's floor managers, Senators Case and Clark, defined "to discriminate" as "to make a distinction, to make a difference in treatment or favor. . . ." H.R. 7152, 110 Cong.Rec. 7213 (1964).
 
 
 [1]
 This view means also that I find no reason for remand for determination of whether or not, if discrimination occurred, it was justified under the "bona fide occupational qualification" exception to Title VII of the Civil Rights Act of 1964 Sec. 703 (a), (e)(1), 42 U.S.C., Sec. 2000e-2 (a), (e)(1)
 
 
 [2]
 The July 28, 1970, application for a job with the advertising department and the refusal to hire around which the proceedings below centered, and dealt with in the majority opinion, was the third or fourth job application made to the appellee by Willingham. According to Willingham's affidavit he was refused employment as an apprentice printer on July 21, 1970, on the stated ground that his long hair might be caught in the machinery and hence constituted a safety hazard. Appellee's answers to appellant's interrogatories indicate that he also applied on July 8, 1969, to the Classified Advertising Department for a job as copy layout artist, but was denied employment because he was under criminal charges in Alabama. According to this source another application was made on August 11, 1969, probably for work in the Dispatch Department, but as to which the appellee's records were stated to be unclear
 
 
 [3]
 The record shows that Macon community disapproval of long-haired males had been recently exacerbated by an "International Pop Festival" on July 3, 4, 5, 1970, at Byron, Georgia, a small community 15 miles from Macon. The crowds attracted to Byron were variously estimated at between 400,000 and 500,000 people. Bearded and long-haired youths and scantily dressed young women flooded the countryside. Use of drugs and marijuana was open. Complete nudity by both sexes, although not common was frequently observed. Of course the managing officials of the Macon Telegraph Publishing Company were peculiarly aware of community indignation over excesses during the Byron Pop Festival because of the wide publicity in it own daily newspaper. The appellee was entitled to consider that the business community of Macon, including its own advertisers, was particularly sour on youthful long-haired males at the time of Willingham's application of July 28, 1970. It was a fair inference on the part of company officials that advertisers would share an attitude not significantly different from that of the community in general
 
 
 [4]
 See the district court decisions cited near the top of page 538 of the majority opinion. The single Court of Appeals decision cited there under a "Cf.", Crews v. Cloncs, 7 Cir. 1970, 432 F.2d 1259, is completely inapposite since it involved the constitutionality of school hair length regulations imposed on students by school boards. If the majority thought school hair cases apposite, it is surprising they did not draw upon the long list of Fifth Circuit school hair cases beginning with Ferrell v. Dallas Independent School District, 5 Cir. 1968, 392 F.2d 697, cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed. 2d 125 and concluding with our two recent en banc cases, Karr v. Schmidt, 5 Cir. 1972, 460 F.2d 609, and Lansdale v. Tyler Junior College, 5 Cir. 1972, 470 F.2d 659
 
 
 [5]
 The judgments in these cases are pending on appeal in their respective circuits