**Robert YARBROUGH, Plaintiff,**

v.

**CITY OF JACKSONVILLE et al., Defendants.**

**No. 72–758–Civ–J–S.**

United States District Court, M. D. Florida, Jacksonville Division.

Sept. 20, 1973.

Samuel S. Jacobson, Jacksonville, Fla., for plaintiff.

William Lee Allen, Jacksonville, Fla., for defendants.

## ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

This Court is asked to decide the issue of whether the haircut regulation established by the defendants for the Fire Protection Division of the City of Jacksonville, Florida, unconstitutionally infringes upon the firemen's right to freedom of personal expression. This issue is resolved in the negative on the basis of this Court's firm conviction: (1) that it is not the province of this Court to substitute its judgment for the informed expertise of the officials who promulgated this particular regulation in the absence of a showing of arbitrariness or unreasonableness; and (2) that the right of personal expression, which is solemnly respected and cherished under our Constitution as to almost all phases and aspects of life, may be subjected to minor abridgements thereof where considerations of personal and public safety are brought to the foreground.

The specific factual context insofar as it relates to the particular plaintiff herein will be noted only briefly. Plaintiff Robert Yarbrough was discharged from employment as a fireman with the Fire Protection Division of the Department of Public Safety for the City of Jacksonville on December 17, 1970, for insubordination for refusing to obey an order by Fire Chief J. J. Hubbard that he cut his hair and trim his sideburns to comply with departmental grooming regulations. Plaintiff brought this action to invalidate the regulations and to obtain reinstatement and back pay. The Jacksonville Association of Firefighters, Local 1834, was allowed to intervene under Rule 24 of the Federal Rules of Civil Procedure on the ground that its interests coalesced with those of the plaintiff in seeking to invalidate the regulations at issue here.

Plaintiffs (both Yarbrough and the Union) contend that the haircut regulations of the Fire Protection Division have no rational relationship to the needs or functions of the division and that the regulations were arbitrarily promulgated to accommodate the particular tonsorial predilections of the individuals vested with the authority to establish said regulations. They also contend that the regulations do not serve to promote any interest in job performance and are an illegal infringement upon the constitutionally protected rights of freedom of expression of the firemen. Defendants, on the other hand, assert that the regulations under scrutiny are necessitated on two grounds: (1) safety considerations and (2) the need for discipline in a "quasi-military organization". They deny that there exists a constitutionally

protected right to freedom of choice as to one's particular hairstyle.[1]

Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1343, 2201, 2202 and 42 U.S.C. §§ 1981, 1983, 1983 and the First, Fifth, Ninth, Tenth and Fourteenth Amendments to the Constitution.

The current hair regulations for Jacksonville firemen, which were promulgated on March 31, 1972, and which went into effect on April 7, 1972, are as follows (except that the current policy is liberalized to the extent that hair on the back of the head is now allowed to be blocked instead of tapered):

1. Mustaches are permissible, provided they are neatly trimmed and non-eccentric. The mustache shall not extend beyond a line perpendicular to the corners of the mouth, nor below a line horizontal with the corner of the mouth.

2. Hair shall be well-groomed, cut short or medium length and neatly trimmed. The hair outline shall follow the contour of the ear and slope to the back of the neck. *The hair on the back of the head shall be tapered so as to conform to the contour of the head and shall not extend beyond an imaginary line, one-half inch above the collar.* [The emphasized language, as indicated above, has been liberalized to permit blocking in the back of the head instead of tapering].

3. Sideburns shall be neatly trimmed, not to exceed one inch in width, and shall not extend beyond the bottom of the ear lobe.

4. Members shall be clean shaven upon reporting for duty and shall remain clean shaven throughout their tour of duty. Beards, bushy sideburns, and eccentric hair styles are forbidden. Diagrams of the above-mentioned styles are being distributed with this order. It shall be the duty of the Chief Officers to see that the Company Officers enforce these Rules and Regulations.[2]

The substance of these rules resulted from certain recommendations submitted to Chief Smith[3] by a special Rules and Regulations Committee which he appointed and which was composed of a Chief Officer, a Captain, a Lieutenant, an Engineer and a Private. Chief Smith subsequently adopted these recommendations and, shortly after written notice thereof was published, the regulations were changed to permit the box cut.

At the non-jury trial of this case which began on July 5, 1973, and which was later resumed and concluded on July 19, 1973, there was adduced conflicting evidence as to the safety ramifications of hair length. Plaintiffs' case in this regard consisted of the following: (1) the testimony of Fire Private Donald G. Ellis, the substance of which was that in his personal opinion there was no rational relationship between the grooming code and performance by firefighters; (2) the demonstration by Fire Private Lee Ellis that sideburns extending below the ear would not necessarily interfere with the seal of the gas mask specifically adopted for firefighting use; (3) the

---

1. Defendants also contended that plaintiff Yarbrough was not fired for violating the hair regulations, but for insubordination for refusing to obey a direct order by the fire chief to have his hair cut. This seems to the Court to be a distinction without a difference insofar as the substantive issue involved is concerned. In addition, defendants also contend that Yarbrough's claim is barred by the statute of limitations, by laches and by *res judicata.* These alleged defenses do not merit further discussion since they do not affect disposition of this case.

2. It should be pointed out that during the period when Yarbrough was hired and subsequently discharged (February 1969—December 1970), the regulations required that sideburns extend no further than the middle of the ear, thus indicating a trend toward liberalization of the rules.

3. Chief Smith succeeded Chief Hubbard as chief when the latter retired in 1971.

testimony of Fire Private Johnny M. Sirmans that firemen were allowed to wear wigs but that the wigs were required to conform to regulations even if the fireman were totally bald and could yank his wig off when the alarm sounded; (4) the testimony of short-haired Private Rembert F. Arnold that his long-haired co-participants in the Certified Smokediver's program at the Florida State Fire College performed equally as well as he did in obtaining the Smokediver's Certificate and that some of the co-participants had hair almost down to their shoulders.

■ A summary of defendants' evidence which supports the conclusion that there was a rational connection between personal safety and hair length is as follows: (1) the testimony of Yarbrough's immediate superior, Lieutenant Shrewsbury, that in his personal opinion long sideburns would have a tendency to interfere with the seal of the gas mask and that long hair per se would cause problems from the "flash standpoint"; (2) the testimony of now retired Chief Hubbard, with 44 years of firefighting experience, that long hair would be much more prone to catching fire; (3) the testimony of Navy Chief Petty Officer H. P. Underwood that long sideburns could interfere with the seal of a gas mask according to the size of the individual's face since gas masks were standard in size and that long hair on the back of the head could cause a gradual loosening of the gas mask head straps thereby affecting the adequacy of the seal; (4) the testimony of present Chief William E. Smith, with 42 years of firefighting experience, that the longer the hair and sideburns the more chance there was for inward leakage in the gas mask; and (5) the submission into evidence of two firefighting industry articles[4] involving empirical studies of the specific relationship between facial hair and sideburns and gas mask leakage that concluded that the leakage rate significantly increased as the amount of facial hair and/or length of sideburns increased. Both sides agreed that the direct effect of breakage of the seal of the gas mask was the increased susceptibility to smoke inhalation which in turn could potentially result in substantial impairment in effectiveness and even severe illness or death. The crux of this discussion is simply that no conclusive determination can be made as to the effect of longer hair styles on the personal safety of firemen and this Court is unwilling to interfere with the reasonable conclusions of the responsible officers in the Fire Protection Division that there is a rational relationship between longer hair and personal safety of its firemen. In addition, it should be emphasized that the evidence indicated an uncontroverted demonstrable link between the personal safety of the firemen as it related to their effectiveness to fulfill their firefighting duties and the public safety, in that when firemen become overcome with smoke as a result of leakage in their gas masks, greater burdens are imposed on the other members of the unit who have to take up the slack created by the debilitation of the overcome fireman. This creates additional hazards to the remaining firemen, lessens their effectiveness and in turn thereby affects the conceded public interest in the alacritous extinguishing of fires.

The second basis for this Court's conclusion that the hair regulation *sub judice* does not encroach upon constitutional freedom of expression is the firm conviction that it is not the function of the judiciary to interfere with a fire chief's reasonable notion as to what is necessary to maintain discipline within a "quasi-military" organization for which he is responsible and which is dedicated to the protection of the public and its property. There is only one case which this Court has found which deals with the

4. Griffin and Longson, "Influence of Facemask Design on Operational Performance", *Fire Command* 18 (September 1971); Mc-Donagh, "Beards, Masks and Research", *Fire Engineering Magazine* (December 1971).

constitutional validity of a *fireman's* haircut regulation, although, by analogy, there are several policemen's haircut regulation cases that bear on the holding in the case at bar. The firemen's haircut regulation case is Lindquist v. City of Coral Gables, 323 F.Supp. 1161 (S.D. Fla.1971), from which no appeal was apparently taken. That case struck down the Coral Gables, Florida, firemen's regulation. Even though this Court is not bound by the holding in that case since it never became the law of the Fifth Circuit, it is certainly persuasive since the opinion was that of a very able trial judge. The case is, however, distinguishable on several counts. First of all, in that case, the parties stipulated[5] that the length of the plaintiff's sideburns did not interfere at all with the use of any firefighting equipment used by the Coral Gables Fire Department, that the length of his sideburns did not constitute a "health hazard, physical danger to others, an obscene exposure [?], a violation of any law, or a distraction to other firefighters" in the performance of their duties; that the fire department had never conducted any "tests, investigations, examinations, or surveys to determine what the length,

size and shape of sideburns should be permitted to be worn by Coral Gables firefighters"; and that the sole bases for the regulation (which is similar to the one herein) were "uniformity, neatness and style". In contradistinction to *Lindquist*, this case involves at least a colorable controversy, if not an extremely close factual question, as to the relationship between hair length and safety. In addition, *Lindquist* was written prior to publication of the articles cited in footnote 4 which defendants relied upon to demonstrate the link between hair length and safety. Therefore, as can be easily seen, the safety considerations brought out by defendants herein did not any way appear to enter into the deliberations of Judge Atkins in *Lindquist*. Further, neither the stipulation in that case nor the opinion of the Court advert to discipline as being a justification for the regulation as it is in this case. In sum, then, this Court refuses to follow the *Lindquist* decision for the reasons set forth above.

As to the constitutional validity of policemen's haircut regulations which are sufficiently tangentially related to firemen's haircut regulations because of the similarity in the *disciplinary* (as distin-

---

5. This pre-trial stipulation in *Lindquist* is set forth below:

*Agreed Facts*

\*      \*      \*      \*      \*

5. Plaintiff performed his duties in a competent and satisfactory manner, without complaint from his supervisory personnel or from the public. His employment record is without any complaints of misconduct, unlawful behavior, breach of responsibility or other improper attitude or conduct on his part.

\*      \*      \*      \*      \*

9. That the sole reason for the suspension of *Oran J. Lindquist* from the City of Coral Gables Fire Department was that as expressed in the Coral Gables inter-office communication dated September 17, 1969, by Chief *Paul T. Matheson* (See Exhibit "A") was the length of Plaintiff's sideburns. [sic]

10. That at no time did any of Defendants conduct any tests, investigations, examinations, or surveys to determine what the length, size and shape of sideburns

should be permitted to be worn by Coral Gables firefighters.

11. That the length of Plaintiff's sideburns did not in any way interfere with the wearing of any equipment used by Coral Gables firefighters.

12. That the length of Plaintiff's sideburns did not constitute a health hazard, physical danger to others, an obscene exposure, a violation of any law, or a distraction to other firefighters from various official tasks and duties.

\*      \*      \*      \*

14. That it was the City of Coral Gables 'Judgment Decision' to promulgate a regulation requiring the length of firefighters' sideburns not to exceed the bottom of his earlobes, (See Exhibit 'B' attached hereto).

15. That the guidelines employed by the City of Coral Gables in making such a judgment decision were uniformity, neatness and style.

323 F.Supp. 1161, 1163–1164.

guished from the *safety*) considerations involved, this Court has the benefit of conflicting decisions from two different circuits. These cases are Dwen v. Barry, 483 F.2d 1126 (2d Cir., 1973) and Stradley v. Anderson, 478 F.2d 188 (8th Cir. 1973), aff'g Stradley v. Anderson, 349 F.Supp. 1120 (D.Neb.1972).

In Dwen v. Barry, which disapproved of *Stradley, supra,* the Second Circuit struck down the hair grooming standards of the Suffolk County, New York, Police Department on the basis that the hair regulations constituted an "arbitrary and unjustifiable infringement of his personal liberty . . .", p. 1129; that the police department failed to make "the slightest showing of the relationship between its regulation and the legitimate interest it sought to promote", and that the sole evidence presented by the department failed to demonstrate "the necessity for the regulation in maintaining discipline". P. 1131. Although this Court agrees with the dictum statement in *Dwen* that "the Constitution limits the state's right to regulate the personal appearance of its citizens", p. 1130, this limitation does not extend to impair the reasonable operating regulations of a fire department where the public safety is concerned. This Court feels that, apart from the safety considerations already discussed as to fire equipment and long hair, there is rational relationship between discipline among firefighters and public safety and that it is not the province of this Court to dictate to responsible firefighting officials its own philosophy as to the best method to promote discipline.

The Court is impressed with the reasoning of the conflicting policemen's haircut regulation decision of Stradley v. Anderson, *supra,* and respectfully adopts it as its own in the context of a firemen's regulation:

Appealing contrasts are urged to justify individual styling—thus, plaintiff pleads that the order will allow mustaches "such as that of Adolph Hitler, but not permit those modeled after Mark Twain, Dean Acheson or other prominent and respected persons." We cite these comparisons because we think the essential weakness of the argument lies in this contrast—plaintiffs are not serving in the role of dictators, authors or statesmen, but rather, they have undertaken responsible roles in a disciplined organization as public officers to enforce and maintain law and order in a given community. Herein lies the distinction between weighing the competing interests of a school board and a school student.

Traditionally, the policeman has been a highly trained officer who is entrusted with a responsible and oftentime dangerous role as a public servant. His work habits on active duty require disciplined conduct, regimentation and frequent strict adherence to regulation and authorized detail. His job is often a delicate and difficult task to lawfully act against those who are sometimes unwilling to recognize any rules or ethics. It is essential that a policeman's training be such that he be taught to obey strict disciplinary procedure and rules in order to lend practical assurance that he will follow command and not abuse his awesome authority. As part of this discipline the police department has determined that an officer shall be neat in his appearance. There can be little argument that this requirement constitutes a legitimate departmental interest.

We reject the idea that community standards provide a legitimate basis in weighing constitutional rights guaranteed to the individual. Whether public acceptance or rejection of a particular hair style exists in one community or another should not be a standard of concern to a federal court. What must be controlling to the court in evaluating competing interests is whether the policy of the state espouses a societal interest which outweighs the individual concern. Thus, what is essential here is that the Public Safe-

ty Department stresses the need for public respect of its officers and that it feels such respect flows in part from the officers' individual appearance. If Chief Andersen misjudges, as plaintiff suggests, what necessary measures should be taken to achieve community respect, this basically must be the department's concern, not ours.

One may argue that how one wears his hair has little to do with whether an officer might effectively apprehend criminals or otherwise fulfill his assigned mission as a policeman. This misses the mark. The critical factor is that police officialdom deems it necessary that the officer be well disciplined and that as part of that internal discipline, he be required to maintain a neat appearance. The degree of that appearance, as long as it is not arbitrary or unreasonable, should not be the court's concern.

Unlike the school cases, those officials who have spent their life in police work, who are trained in law enforcement discipline, possess far better empirical judgment of what is essential to achieve an efficient and disciplined police force than the officers themselves, the public or the predeliction of individual judges. If this results in a problem of low morale of police personnel, which plaintiff contends, this too is Chief Andersen's dilemma, not the courts'. This does not mean that the courts will ignore an arbitrary edict which might deprive a police officer of his sense of dignity or morality as a human being. But we are not dealing with arbitrariness—the only issue before us is the authority of a Public Safety Division of a municipality to set standards of neat appearance for its personnel balanced against the individual rights of a police officer to appear as he likes. In

light of this competing and legitimate interest of the Public Safety Division, as weighed against the individual officer's personal likes or dislikes, we sustain the regulation. In accord Greenwald v. Frank, 70 Misc.2d 632, 334 N.Y.S.2d 680 (1972); Dwen v. Barry, 336 F.Supp. 487 (E.D.N.Y.1971); cf. Doyle v. Koelbl, 434 F.2d 1014 (5 Cir. 1970), cert. denied, 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 649 (1971). (italics emphasized)

As pointed out in *Stradley, supra,* cases involving *student* haircut regulations are inapposite because of the responsible positions assumed by the plaintiff firemen in undertaking to protect the general public. Therefore, the Court fees that the authoritative *en banc* decisions of the Fifth Circuit regarding student haircut regulations, Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972) and Lansdale v. Tyler Junior College, 470 F.2d 659 (5th Cir. 1972),[6] do not bear on the issue herein involved.

In addition, the recent Fifth Circuit decision of Willingham v. Macon Telegraph Publishing Co., 482 F.2d 535 (5th Cir., decided June 28, 1973),[7] is plainly inapposite, in that *Willingham* involved the issue of whether an employer's grooming code requiring male job applicants to adhere to hair styles different from that required of female job applicants constitutes sex discrimination in contravention of the 1964 Civil Rights Act. In the case at bar, there was no allegation of sex discrimination and the jurisdiction of the 1964 Civil Rights Act was never invoked. Further, the employment involved in *Willingham* was not vested with the public interest to the same extent it is here.

Another case which this Court finds uncontrolling here is Friedman v. Froehlke, 470 F.2d 1351 (1st Cir. 1972),

---

6. *See also* Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1971), and Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968), cert. denied 393 U.S. 856, 89 S. Ct. 98, 21 L.Ed.2d 125.

7. It should be pointed out that on September 5, 1973, the Fifth Circuit decided that *Willingham* is to be reheard *en banc* during the October term.

which held invalid a regulation prohibiting members of the National Guard who were not bald or disfigured from wearing wigs so as to comply with short hair requirements. Several factors distinguish *Friedman* from this case. First of all, the underpinning of *Friedman* was the fact that the affected members of the class were reservists whose time spent on military duty was but a very small fraction of the time spent in civilian pursuits, 470 F.2d at 1352, in contrast with the full-time status of the plaintiffs here. Second, there was a lack of concrete evidence in *Friedman* which would demonstrate that wigs actually interfered with the wearing of gas masks. In the instant case, there was considerable evidence, although controverted in certain particulars, that long hair and sideburns did interfere with gas masks. In addition, as was pointed out, the firemen here are allowed to wear wigs, although they concededly have to conform to the regulation.

In sum, therefore, this Court finds that there has not been a sufficient constitutional justification for judicial interference with what appears to be an arguably reasonable and nonarbitrary regulation which is rationally related to a legitimate state interest in public safety.

This opinion constitutes the Court's findings of fact and conclusions of law.

Therefore, it is

Ordered:

1. That a declaratory judgment is hereby granted to the defendants in accordance with the foregoing opinion.

2. The injunctive relief sought by the plaintiffs is hereby denied.

3. The relief sought by the plaintiff Robert Yarbrough in the nature of reinstatement and reimbursement for financial loss due to his discharge from employment by the Fire Division of the City of Jacksonville, Florida, is hereby denied.