**Lawrence W. BOYCE, Plaintiff,**

v.

**SAFEWAY STORES, INC., Defendant.**

**Civ. A. No. 430–72.**

United States District Court,
District of Columbia.

Dec. 4, 1972.

Robert B. Fitzpatrick, Washington, D. C., for plaintiff.

W. Frank Stickle, Jr., Washington, D. C., for defendant.

### MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

Plaintiff, a part-time food clerk, was discharged by Safeway about two months after being hired because his head and facial hair no longer conformed to written grooming standards previously established by the company as applicable to male employees who have regular contact with the public. He claims this action violated Section 703 of the 1964 Civil Rights Act (42 U.S.C. § 2000e–2) and seeks a declaration of rights and damages. The issue of liability is now before the Court on cross-motions for summary judgment and has been fully briefed and argued.*

Safeway hires men and women indiscriminately for food clerk positions without regard to sex or race. All male and female employees dealing with the public must comply with separate written grooming standards developed for men and for women. The male standard does not allow for head hair as long as that permitted women, and the female standard does not deal with mustaches beards and sideburns. Because of this differentiation, plaintiff claims that Safeway

---

* Framed as a class action, the parties at pretrial agreed to leave the class aspects and damage questions for later determination pending a determination as to whether the discharge was offensive under the statute.

is unlawfully discriminating against males. The pertinent section of the statute reads as follows:

(a) It shall be an unlawful employment practice for an employer—

(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . .

. . . . .

(e) (1) it shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of [their] . . . sex . . . in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.

As has been often noted, there is no meaningful legislative history indicating what Congress had in mind by this sweeping pronouncement. It is obvious that forms of sex discrimination based on the notion that women cannot be employed because they are frail, get pregnant, should not be employed on jobs involving travel, cannot do dangerous work, etc., are prohibited. It is also obvious that sex discrimination cannot be accomplished by establishing such an artificial work standard that for practical purposes one sex is necessarily almost eliminated from consideration: e. g., men must wear female dress, all employees must have played high school football, or the like.

The present case has none of these obvious attributes of discrimination. Here is an employer who simply wished to have its personnel meet grooming standards which in its judgment will appeal to the largest number of its customers. No claims of violations of fundamental constitutional rights are made.

The employer, moreover, is not attempting to stereotype its male and female employees, for the grooming standards allow for great variation in individual dress and appearance within the limits permitted. There is no proof that the standards have resulted in favoring or deterring men or women from employment. In short, the mild grooming rules are not shown to discriminate on the basis of sex any more than a condition of employment that requires males and females to use separate toilet facilities, or bars males but not females from wearing skirts.

With one or two arguable exceptions, this is a case of first impression for the federal courts. Invariably those cases that have struck down discriminations based on sex have been dealing with outmoded and unjustifiable sex stereotypes based on supposed physical or mental biological differences between the sexes, where those stereotypes had distinct employment opportunity disadvantages for one sex. It is understandable, therefore, why in such circumstances the bona fide occupational qualification is accepted as a narrow exception to the broad sweep of the Act. E. g., Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir.), cert denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). The United States Supreme Court has not chosen to embellish this exception with notions of "essentiality" or "critical business necessity," but rather recognizes that the "reasonably necessary to the normal operation" standard of the exception means no more than that a requirement of employment has a demonstrable relevance to the job performance of one of the sexes. Phillips v. Martin Marietta Corp., 400 U.S. 542, 543, 91 S.Ct. 496, 497, 27 L.Ed.2d 613 (1971).

As the Court noted at substantial length in Griggs v. Duke Power Co., employment requirements "are not to become masters of reality." 401 U.S. 424, 433, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). Surely public opinion surveys of justification are not required every time a company may decide to change its dress and grooming code for its public-contact employees. The objectives of the Act are to eliminate artificial and arbitrary standards bearing no relationship to a person's job performance. Here, Safeway has sought to establish a clear and concise written rule for the grooming of its public-contact employees, male and female, so that those employees will be protected from arbitrary and unreviewable decisions by individual store managers. Safeway should not be penalized for such a laudable effort.

Plaintiff concedes that an employer such as Safeway is entitled under the Act to have a grooming code for its sales force that works with the public. He obeys the rest of Safeway's dress and grooming code, but chooses to quarrel only with this particular part of this particular code. Plaintiff suggests that the Act allows Safeway to bar a "wild hippie" from public-contact employment, but plaintiff's "more reasonable" attire and grooming cannot be made unacceptable. Certainly the Act can have no such meaning. Congress by this Act did not give the federal courts the task of deciding whether hair at the collar level or one-half inch below is a bona fide occupational qualification. Such a suggestion is absurd; such a task borders on the non-justiciable. Safeway's grooming code is not arbitrary, and for its public-contact employees, serving as its only sales force, such a reasonable code is a bona fide occupational qualification.

To be sure, there may be only a few who feel strongly that males who look like President Arthur or Horace Greeley should not be allowed to work in Safeway. Safeway's management may well be out of touch with the attitudes of its own customers, but all this is beside the point. The laws outlawing sex discrimination are important. They are a significant advance. They must be realistically interpreted, or they will be ignored or displaced. Ours should not be an effort to achieve a unisex society or an effort to eliminate all standards for modes of dress and grooming set for employees who want to serve the public.

In accordance with the foregoing findings of fact and conclusions of law, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

So ordered.