**Stephen DODGE et al., Appellants,**

v.

**GIANT FOOD, INC.**

**No. 71–1415.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 25, 1973.

Decided Nov. 26, 1973.

Ben Paul Noble, Washington, D. C., with whom Thomas O. Mann, Washington, D. C., was on the brief for appellants.

David W. Rutstein, Washington, D. C., with whom Robert F. Rolnick, Washington, D. C., was on the brief for appellee.

Julia P. Cooper, Chief, App. Section, Equal Employment Opportunity Commission, and Charles L. Reischel, Atty., Equal Employment Opportunity Commission, filed a brief on behalf of Equal Employment Opportunity Commission urging reversal.

Robert A. W. Boraks and John Ellsworth Stein, Washington, D. C., filed a brief on behalf of American Civil Liberties Union Fund as amicus curiae urging reversal.

Before TAMM, MacKINNON and ROBB, Circuit Judges.

**PER CURIAM:**

██ Plaintiffs are male employees of Giant Food, Inc., a food store chain, who have been discharged or assigned to unfavorable positions because they chose to wear their hair longer than permitted by Giant's grooming regulations. Plaintiffs filed this class action [1] contending

---

[1]. The alleged class comprises all males who have been refused employment, discharged or forced to cut their hair, trim their mustaches or shave their beards as a result of defendant's grooming regulations. Although only two of the named plaintiffs obtained a "notice of right to sue" from the EEOC, the class action may be maintained on behalf of aggrieved individuals who have not filed charges with the Commission. E. g., Macklin v. Spector Freight Systems, Inc., 156 U. S.App.D.C. 69, 75 n. 11, 478 F.2d 979, 985 n. 11 (1973); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719–721 (7th Cir. 1969); Robinson v. Lorillard Corp., 444 F.2d 791, 801–802 (4th Cir.), cert. dismissed, 404 U.S.

that the defendant's grooming regulations violate the prohibition against sex discrimination contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[2] Following a trial without a jury, the district court entered findings of fact, conclusions of law, and judgment for the defendant. We affirm.

Plaintiffs make no allegation that Giant discriminates between men and women in its hiring policies. However, all of Giant's employees must comply with separate written grooming standards for men and women. The grooming regulations provide:

### MALE EMPLOYEES

No hair may exist below the earlobe except for a neatly trimmed mustache which does not droop or hang over the upper lip.

No beards allowed.

Haircuts must not be long or ragged. If it is neat, groomed and reasonably trimmed on the back of the neck, it meets Giant's standards. If however, it is ragged and not reasonably trimmed, and gives the impression of being unreasonably long, unkept or ragged, it does not meet the standard.

### FEMALE EMPLOYEES

Whatever the style, hair should be kept neat.

Avoid off-beat or extreme hair styles, especially the following: obviously dyed hair, unnatural colors (green, blue, etc); ragged hair styles.

*Long hair must be secured and may not fall freely.*

In compliance with hair regulations, meat wrappers, self-service delly clerks and bakery clerks must wear a hair net if hair is difficult to manage. (Emphasis in original.)

Section 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . .

\*   \*   \*   \*   \*   \*

(e) (1) it shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of [their] sex . . . in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation

1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). Furthermore, members of the aggrieved class who have not filed charges may join as co-plaintiffs in the litigation. Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968) ; *see* DeFigueiredo v. Trans World Airlines, Inc., 322 F.Supp. 1384 (S. D.N.Y.1971) ; Hall v. Werthan Bag Corp., 251 F.Supp. 184, 188 (M.D.Tenn.1966).

2. *See* note 3 *infra* and accompanying text. While jurisdiction in the trial court was also urged pursuant to 42 U.S.C. §§ 1981, 1983, for the purposes of this appeal appellants rely solely on Title VII. Brief for Appellants at 3.

In addition to their allegations of sex discrimination, various appellants contend that they suffered racial discrimination because of Giant's grooming regulations. We find no merit in these allegations. Also, we note the district court's Finding of Fact No. 4: "No showing has been made of discrimination against negro males wearing a natural or modified Afro coiffure, since the hair held [*sic*] together and brushed upward and outward from the neck. There was no evidence of Giant's taking any action against this form of hair arrangement."

of that particular business or enterprise.[3]

■ Application of this statute requires a two-step analysis. It must first be determined that a discrimination on the basis of sex has occurred.[4] If there is no sex discrimination, the inquiry ends. However, if the court concludes that an employer has discriminated on the basis of sex then it is the employer's burden to establish that a "bona fide occupational qualification" (BFOQ) reasonably necessary to the operation of the employer's business justifies the discriminatory practice.[5] We conclude that Giant's hair-length regulations do not discriminate or classify within the meaning of the statute, and thus do not reach the issue whether hair length is a bona fide occupational qualification in this case.

It is necessary at the outset to identify the classification which allegedly violates the statute. Although the grooming regulations obviously distinguish between *long* and *short* haired males, it is equally clear that the regulations treat long haired males differently than long haired females.[6] Thus, the regulations embody a distinction among employees based upon their sex. The issue is whether this distinction is an unlawful discrimination or classification within the meaning of the statute.

The decisions are divided on the question whether separate hair-length regulations for men and women constitute sex discrimination in violation of the Civil Rights Act.[7] In Willingham v. Macon Telegraph Publishing Co.[8] a three-judge panel of the Fifth Circuit concluded that virtually any difference in treatment of the sexes, including separate hair-length regulations, is a per se violation of the statute.[9] That decision has been scheduled for rehearing en banc.[10]

One day after *Willingham* was decided, the District of Columbia Circuit in Fagan v. National Cash Register Co.[11] examined the authorities on the issue and concluded that Congress never intended the statute " 'to interfere in the promulgation and enforcement of general rules of employment, deemed essential by the employer, where the direct or indirect economic effect upon the employee was nominal or non-existent.' " [12] Therefore, the court interpreted the statute to prohibit only those classifications or discriminations which afford significant employment opportunities to one sex in favor of the other.[13] Since

---

3. In 1972, Section 2000e–2(a)(2) was amended to cover "applicants for employment" as well as employees. Pub.L. No. 92–261, § 8(a), 86 Stat. 109 (Mar. 24, 1972).

4. 42 U.S.C. § 2000e–2(a).

5. Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228, 232 (5th Cir. 1969); *see* 42 U.S.C. § 2000e–2(e); Note, Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1169 (1971).

6. *Cf.* Note, note 5 *supra*, at 1171.

7. Willingham v. Macon Tel. Publishing Co., 482 F.2d 535 (5th Cir. 1973) (discrimination); Fagan v. National Cash Register Co., 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973) (no discrimination); Boyce v. Safeway Stores, Inc., 351 F.Supp. 402 (D.D.C.1972) (no discrimination); Baker v. California Land Title Co., 349 F.Supp. 235 (C.D.Cal. 1972) (no discrimination); Aros v. Mc-

Donnell Douglas Corp., 348 F.Supp. 661 (C.D.Cal.1972) (discrimination); Donohue v. Shoe Corp. of America, 337 F.Supp. 1357 (C.D.Cal.1972) (discrimination).

8. 482 F.2d 535 (5th Cir. 1973).

9. *See id.* at 537–538 & n. 3.

10. *Id.* at 542.

11. 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973).

12. *Id.* at 23, 481 F.2d at 1123, *quoting* Baker v. California Land Title Co., 349 F.Supp. 235, 238 (C.D.Cal.1972).

13. The court quoted with approval from Boyce v. Safeway Stores, Inc., 351 F.Supp. 402, 403 (D.D.C.1972), where Judge Gesell noted that prior decisions had interpreted Title VII to proscribe only those "outmoded and unjustifiable sex stereotypes [which] had *distinct employment opportunity disadvantages for one sex.*" 157 U.S.App.D.C. at 23, 481 F.2d at 1123 (emphasis added).

hair length is not an immutable characteristic but one which is easily altered, the *Fagan* court concluded that the sexual distinction embodied in the hair-length regulations does not significantly affect employment opportunities and thus does not violate the statute.[14]

The *Fagan* decision settled the law in this circuit and controls the present case. We are not persuaded by the appellants' attempted distinction of *Fagan* on the ground that the employer in that case had no women employees in the department subject to the regulation.[15]

The court's extended discussion of the statute and relevant decisions makes clear that the absence of women employees was not the focal point of the *Fagan* decision. Indeed, the court stated that it was "persuaded by the reasoning and the treatment" in the cases holding hair-length regulations not discriminatory.[16]

The *Fagan* decision represents the more reasonable and realistic interpretation of Title VII.[17] Title VII serves the important goal of eliminating arbitrary sex discrimination in employment,[18] and our decision in no way denigrates this laudable goal. As Judge Gesell remarked in Boyce v. Safeway Stores, Inc.: [19]

> [Defendant's] management may well be out of touch with the attitudes of its own customers, but all this is beside the point. The laws outlawing sex discrimination are important. They are a significant advance. They must be realistically interpreted, or they will be ignored or displaced.

Some courts have analogized hair-length regulations to the requirement that men and women use separate toilet facilities [20] or that men not wear dresses.[21] Admittedly these are extreme examples, but they are important here because they are logically indistinguishable from hair-length regulations. These examples, like hair-length regulations, are classifications by sex which

---

14. 157 U.S.App.D.C. at 25, 481 F.2d at 1125.

15. The *Fagan* court pointed out that "no woman here complained of the company's policy" and that "there are no women employees here involved." *Id.* at 21, 22, 481 F.2d at 1121, 1122. Further, the court noted that "[t]here is no suggestion that any woman had ever sought or had been denied employment in the [department at issue.]" *Id.* at 1121.

16. *Id.* at 24, 481 F.2d at 1124. The court also stated:
> We here see nothing in the legislative history of the Act or in the Act itself which requires a federal court to rule that an employee's hair style which conflicts with an employer's grooming regulations constitutes *per se* discrimination because of sex. *Id.* at 22 n. 17, 481 F.2d at 1122 n. 17.

17. The legislative history of the sex discrimination provision of the Act is sparse.
> The addition of sex as a forbidden basis of discrimination in employment was offered as a floor amendment to Title VII in the House, without any prior legislative hearings or debate. The original proponent of the measure was a southern congressman who voted against the Act, and whose strategy was allegedly to "clutter up" Title VII so that it would never pass

at all. The passage of the amendment, and its subsequent enactment into law, came without even a minimum of congressional investigation into an area with implications that are only beginning to pierce the consciousness and conscience of America.

Note, note 5 *supra*, at 1167 (footnotes omitted). *See also* Boyce v. Safeway Stores, Inc., 351 F.Supp. 402, 403 (D.D.C.1972).

> Several courts have relied on an interpretative memorandum submitted by Title VII's floor managers which defined "to discriminate" as "to make a distinction, to make a difference in treatment or favor . . . . " H.R. 7152, 110 Cong.Rec. 7213 (1964); *see* Willingham v. Macon Tel. Publishing Co., 482 F.2d 535, 537–538 n. 3 (5th Cir. 1973). However, these comments do not necessarily mean that the Act was intended to invalidate sexual classifications having only an insignificant effect on the employment opportunities afforded one sex.

18. *Cf.* Griggs v. Duke Power Co., 401 U.S. 424, 429–430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

19. 351 F.Supp. 402, 404 (D.D.C.1972).

20. *Id.* at 403.

21. Willingham v. Macon Tel. Publishing Co., 352 F.Supp. 1018, 1020 (M.D.Ga.1972).

do not limit employment opportunities by making distinctions based on immutable personal characteristics, which do not represent any attempt by the employer to prevent the employment of a particular sex,[22] and which do not pose distinct employment disadvantages for one sex. Neither sex is elevated by these regulations to an appreciably higher occupational level than the other. We conclude that Title VII never was intended to encompass sexual classifications having only an insignificant effect on employment opportunities.

In Sprogis v. United Air Lines, Inc.[23] the Seventh Circuit held that United Air Lines' no-marriage policy for stewardesses constituted sex discrimination within the meaning of Title VII.[24] The no-marriage policy for stewardesses in *Sprogis* bears some resemblance to the hair-length regulations here because United employed both men and women for the similar positions of steward and stewardess; the no-marriage policy applied only to stewardesses; and marriage is not an immutable personal characteristic of either sex. The *Sprogis* court concluded that the no-marriage policy was discriminatory within the meaning of Title VII because the policy represented "sex stereotypes" that were "irrational impediments to job opportunities and enjoyment which have plagued women in the past.[25] Appellants in the present case argue that the hair-length regulations similarly represent a sex stereotype which discriminates in violation of the Act.

However, there are important differences between the no-marriage policy in *Sprogis* and the hair-length regulations at issue here. Unlike the employer in *Sprogis* who did not subject its male employees to any restriction similar to the no-marriage policy, Giant enforces strict grooming regulations against both male and female employees. Thus the disparity in treatment of the sexes is not as severe as in *Sprogis*.

Furthermore, although neither marriage nor hair length is an unalterable personal characteristic, marriage has a much more fundamental importance to and effect upon an individual's life. Marriage is more difficult to initiate or to terminate than long hair, and the legal and social ramifications of marriage are far more significant than the consequences of wearing long hair. For these reasons, our decision here does not contravene the *Sprogis* decision.

The issue in these cases is one of degree. Few would disagree that an employer's blanket exclusion of women from certain positions constitutes "discrimination" within the meaning of Title VII. At the same time, few would argue that separate toilet facilities for men and women constitute Title VII "discrimination." The line must be drawn somewhere between these two extremes, and we draw the line to exclude Giant's hair-length regulations from the ambit of Title VII. We do not believe that Title VII was intended to invalidate grooming regulations which have no significant effect upon the employment opportunities afforded one sex in favor of the other.

Affirmed.

22. Plaintiffs make no allegation that Giant's hair-length regulations are a guise or pretext for failing to employ members of one sex.

23. 444 F.2d 1194 (7th Cir. 1971).

24. The court held that the policy discriminated on the basis of sex, *id.* at 1197–1198, and that the policy was not justified as a BFOQ. *Id.* at 1198–1199. We are concerned here only with the finding of discrimination, not with the conclusion as to BFOQ. *See* notes 4–5 *supra* and accompanying text.

25. *Id.* at 1198.