REQUESTED BY: Lawrence R. Myers, Executive Director, Equal Opportunity Commission, 301 Centennial Mall South, Lincoln, Nebraska.
Are charges concerning homosexuality cognizable under the Fair Employment Practices Act (Sections 48-1101 to48-1125, R.R.S. 1943)?
No.
By definition, the question occurs as a jurisdictional concern whether the consideration involved (homosexuality) can constitute proscribed discrimination because it falls within the pale of the act. Resolution is made more difficult by the lack of guidance frequently found in legislative history and/or prior judicial consideration of the question. The question has never been precisely litigated; we therefore find ourselves adrift in seas uncharted, but nevertheless dimly lit by reflective guideposts provided by judicial decisions in other contexts and, of course by the policy and purpose underlying the Fair Employment Practices Act and its progenitor, Title VII, as amended (42 U.S.C. § 2000e-2 et seq.).
At first blush, it would appear that allegations concerning homosexuality could be successfully asserted under the Act, inasmuch as such assertions are sex related and the Act does provide in section 48-1104 that:
 "It shall be an unlawful employment practice for an employer:
 "(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex, . . ."
 "(2) To limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex, . . ."
However, it is our opinion, and courts confronting the issue in other contexts under Title VII have so held, that the statutory proscriptions against sex discrimination do not reach each and every situation involving considerations connected to gender. In General Electric v. Gilbert,97 S.Ct. 401 (1976), for example, the United States Supreme Court found that Congress, in enacting Title VII, `did not intend to depart from the long standing meaning of discrimination' (97 S.Ct. at 410 n. 18), and accordingly held that the exclusion of pregnancy from an employee disability plan was not a gender based classification resulting in sex discrimination under Title VII (97 S.Ct. at 409).
Similarly the Fifth (Willingham v. Macon Telegraph PublishingCo., 507 F.2d 1084, 9 EPD 9957, 1975); Ninth, (Baker v. California Land Title Co., 507 F.2d 895, 8 EPD 9828, cert. denied 422 U.S. 1046, 1975); and D.C. (Dodge v.Giant Food, Inc., 488 F.2d 1333, 6 EPD 8954, 1973) Circuits have held that the so called `Long Hair Cases' did not advance allegations cognizable under the sex discrimination prohibitions (section 703) of Title VII.
Hence, it has been well established that not every gender-connected employment decision, policy, rule or regulation violates the statute or constitutes `sex discrimination.' The determination is ultimately and can only be one of degree; of drawing a line. In that regard, we find the approach, reasoning and result of Boyce v. SafewayStores, Inc., 351 F. Supp. 402, 5 EPD 8077 (D.D.C. 1972), particularly sound and persuasive on question of determining where to draw the line on `what' constitutes prohibited sex discrimination. In that case, Judge Gesell noted that prior decisions had interpreted Title VII to proscribe only those `outmoded and unjustifiable sex stereotypes [which] had distinct employment opportunity advantages for one sex'. He continued: `The laws outlawing sex discrimination are important. They are a significant advance. They must be realistically interpreted or they will be ignored or displaced.'
Applying the foregoing reasoning to homosexuality, it becomes readily apparent that allegations concerning same cannot be reached by the terms of the Act inasmuch as homosexuality, although concededly a `unique sexual characteristic', is not unique to either sex. Therefore, decisions made on that basis could never have a `distinct employment opportunity advantage for one sex'. Furthermore, homosexuality is not an outmoded, unjustifiable, sex stereotypical attitude or belief manifested by an employer; it is a sexual preference, proclivity, or choice of an individual held for reasons wholly unrelated to employment. We believe it highly significant that the sex of the individual professing homosexuality is purely incidental; therefore and in that connection, it is wholly unrelated to sex. Section48-1104 of the Fair Employment Practices Act is concerned with and correspondingly prohibits employment decisions and actions that deprive individuals of employment opportunities `because of such individual's . . . sex . . .'. It does not concern itself nor does it comprehend employment decisions involving homosexuality; a sexual belief which bears absolutely no relationship to either sex.
We conclude that the Fair Employment Practices Act was never intended to encompass employment decisions involving homosexuality. Such considerations do not limit employment opportunities by making distinctions unique to either sex, they do not pose distinct employment disadvantages to either sex, and do not elevate either sex to a higher occupational level than the other. Accordingly, since such considerations cannot constitute discriminatory practices reached by the Act, the Commission is without jurisdiction or authority to investigate or pass upon charges advancing such allegations.