**Michael PECENKA, Appellant,**

v.

**FAREWAY STORES, INC., Appellee.**

**No. 02–1979.**

Supreme Court of Iowa.

Dec. 17, 2003.

Thomas M. Werner, Des Moines, for appellant.

Kirke C. Quinn of Payer, Jordan, Mahoney, Jordan, Quinn, Hunziker & Rhodes, L.L.P., Boone, for appellee.

WIGGINS, Justice.

Michael Pecenka's employment was terminated at Fareway Stores, Inc. (Fareway) after he refused to remove an ear stud during the course of his employment. Fareway had an unwritten personal grooming code prohibiting males but not females from wearing earrings or studs. Pecenka sued Fareway for sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) and the Iowa Civil Rights Act (ICRA). Fareway moved for summary judgment. The district court found Fareway's personal grooming code was not discrimination based on sex within the meaning of the statutes and dismissed Pecenka's suit. Pecenka appeals the dismissal of his suit. We affirm.

## I. Background Facts and Proceedings.

Pecenka worked for Fareway for three months in 1991. On February 14, 2000, he began working for Fareway again as a part-time driver at the company's warehouse. His duties included making deliveries to the receiving areas of individual Fareway stores. On April 1, 2001, Fareway promoted Pecenka to a full-time position working at the company's warehouse in Boone, Iowa. Pecenka always wore an ear stud while employed by Fareway.

On April 12, 2001, Pecenka's supervisor informed him that he must remove his ear stud during working hours or cover it with a bandage. Pecenka's supervisor also told him if he did not comply with this request he would be terminated from his employment. This request was consistent with Fareway's unwritten personal grooming code prohibiting males but not females from wearing earrings or studs. Pecenka refused to remove his ear stud or cover it during working hours. Pecenka's refusal caused Fareway to terminate his employment on April 16, 2001.

Pecenka filed a petition in the district court claiming Fareway discriminated against him because of his sex. He alleged that Fareway's unwritten policy prohibiting males but not females from wearing earrings or studs violated Title VII and the ICRA.

Fareway filed a motion for summary judgment arguing that its unwritten personal grooming code did not qualify as sex discrimination. The district court granted the motion concluding "the degree of sex discrimination engendered by such [grooming] codes and rules is insufficient to trigger the protections of Title VII" and the ICRA. Because the district court did not find actionable discrimination, it did not address whether Fareway's policy was

necessary as a bona fide occupational qualification (BFOQ). Pecenka appealed.

## II. Issue.

The issue here is whether Pecenka's termination from his employment violated Title VII's or the ICRA's prohibition against discrimination on the basis of sex.

## III. Scope of Review.

We review the district court's summary judgment rulings for correction of errors at law. *Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543, 547 (Iowa 2002). The court views "the factual record in the light most favorable to the resisting party, affording that party all reasonable inferences." *Garofalo v. Lambda Chi Alpha Fraternity*, 616 N.W.2d 647, 649 (Iowa 2000). Summary judgment is proper if there is no genuine issue as to any material fact in dispute and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3). If the conflict in the record concerns only "the legal consequences flowing from undisputed facts, or from facts viewed most favorably toward the resisting party," the matter is properly resolved on summary judgment. *City of Akron v. Akron–Westfield Cmty. Sch. Dist.*, 659 N.W.2d 223, 225 (Iowa 2003).

## IV. Applicable Statutes.

Our resolution of the issues depends on the construction of the following two statutes. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 (2001), provides in relevant part:

(a) It shall be an unlawful employment practice for an employer—

(1) to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

. . . .

(e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, ... on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise. . . .

Iowa Code section 216.6 (2001) provides in relevant part:

(1) It shall be an unfair or discriminatory practice for any:

(a) person ... to discharge any employee, ... because of the age, race, creed, color, sex, national origin, religion, or disability of such applicant or employee, unless based upon the nature of the occupation.

## V. Analysis.

■ The purpose of Title VII is to ensure "persons of like qualifications be given employment opportunities irrespective of their sex." *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544, 91 S.Ct. 496, 497–98, 27 L.Ed.2d 613, 615 (1971). Because the ICRA is modeled after the federal legislation, Iowa courts have traditionally looked to federal law for guidance in interpreting it. *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999). Iowa courts, however, are not bound by federal law,

despite consistent utilization of the federal analytical framework. *See Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989).

■ We have followed the United States Supreme Court in identifying two theories of employment discrimination under Title VII. In order to prove one's case under Title VII or the ICRA, the plaintiff must rely on a disparate treatment theory or a disparate impact theory. *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 516 (Iowa 1990). Disparate treatment is when an employer "treats some people less favorably than others because of their ... sex," while disparate impact is when an employer's practice is "facially neutral ... but ... in fact fall[s] more harshly on one group than another." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir.2000).

■ Here, Pecenka relies on the disparate treatment theory. His theory of recovery requires a two-step analysis. The court first must determine whether discrimination based on sex has occurred. *Dodge v. Giant Food*, 488 F.2d 1333, 1335 (D.C.Cir.1973); *Hy–Vee Food Stores*, 453 N.W.2d at 516–17. If there is no discrimination based on sex, the inquiry ends. However, if discrimination based on sex has occurred, the burden shifts to the employer to show a BFOQ exists to justify the discriminatory practice. *Id.*

Pecenka contends that the simple fact his employment was terminated for wearing an ear stud, while females were allowed to wear earrings or studs, establishes a prima facie case of unlawful sex discrimination. We disagree. Pecenka must establish his termination was unlawful sex discrimination under the meanings of Title VII or the ICRA. *Knott v. Missouri Pac. R.R.*, 527 F.2d 1249, 1252 (8th Cir.1975).

There is no meaningful legislative history indicating what the Iowa legislature meant by an "unfair or discriminatory practice" based on sex. *Vivian,* 601 N.W.2d at 874. The legislative history of the sex discrimination provision of Title VII is not substantial. Nevertheless, the federal courts which have examined Title VII's legislative history have found personal grooming codes that reflect customary modes of grooming having only an insignificant impact on employment opportunities do not constitute sex discrimination within the meaning of the Act. *See, e.g., Barker v. Taft Broadcasting Co.,* 549 F.2d 400, 401–02 (6th Cir.1977); *Knott,* 527 F.2d at 1252; *Dodge,* 488 F.2d at 1337.

Several federal appellate courts have considered Title VII in the context of personal grooming codes regulating hair length. Every federal appellate court which has considered personal grooming codes prohibiting men but not women from wearing long hair has found the codes to be non-discriminatory within the meaning of Title VII. *See Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998); *Tavora v. N.Y. Mercantile Exch.,* 101 F.3d 907, 908 (2d Cir.1996); *Barker,* 549 F.2d at 401; *Earwood v. Cont'l Southeastern Lines, Inc.,* 539 F.2d 1349, 1351 (4th Cir.1976); *Longo v. Carlisle DeCoppet & Co.,* 537 F.2d 685, 685 (2d Cir.1976); *Knott,* 527 F.2d at 1252; *Willingham v. Macon Tel. Pub. Co.,* 507 F.2d 1084, 1092 (5th Cir.1975); *Baker v. Cal. Land Title Co.,* 507 F.2d 895, 898 (9th Cir.1974); *Dodge,* 488 F.2d at 1337; *Fagan v. Nat'l Cash Register Co.,* 481 F.2d 1115, 1126 (D.C.Cir.1973).

■ We agree with these decisions and their reasoning. The sex discrimination provisions of Title VII and the ICRA were enacted to stop the perpetuation of sexist or chauvinistic attitudes in employment which significantly affect employment opportunities. Title VII and the ICRA were not meant to prohibit employers from instituting personal grooming codes which have a de minimis affect on employment.

Applying these principles to Fareway's unwritten personal grooming code, we conclude this grooming code did not constitute discrimination based on sex within the meaning of Title VII or the ICRA. This grooming code was never intended to be covered by Title VII's or ICRA's prohibition against discrimination on the basis of sex. *See Kleinsorge v. Eyeland Corp.,* 81 Fair Empl. Prac. Cas. (BNA) 1601 (E.D.Pa.2000) (holding personal grooming code which allows females to wear earrings but prohibits men from wearing earrings does not constitute a violation of Title VII); *Capaldo v. Pan Am. Fed. Credit Union,* 43 Empl. Prac. Dec. (CCH) ¶ 37,-016 (E.D.N.Y.1987) (holding unwritten personal grooming code which allows females to wear earrings but prohibits men from wearing earrings does not constitute a violation of Title VII); *Lockhart v. Louisiana–Pacific Corp.,* 102 Or.App. 593, 795 P.2d 602, 604 (1990) (holding personal grooming code which allows females to wear jewelry but prohibits men from wearing facial jewelry was not sexually discriminatory under state statute).

Because there was no discrimination on the basis of sex, our inquiry ends. An employer is not required to justify any business practice unless the sex discrimination has been established. *Dodge,* 488 F.2d at 1335; *Hy–Vee Food Stores,* 453 N.W.2d at 516–17. The district court was correct in not requiring Fareway to show a BFOQ.

■ Alternatively, Pecenka contends the "sex-plus" discrimination analysis found in *Phillips,* 400 U.S. at 544–47, 91 S.Ct. at 498–99, 27 L.Ed.2d at 616–17, proves his prima facie case of discrimination on the basis of sex.

"Sex-plus" discrimination occurs when employees are classified on the basis of sex plus one other seemingly neutral characteristic. Interpreting [Title VII] to proscribe this type of discrimination ... means that similarly situated individuals of one sex cannot be discriminated against vis-à-vis members of their own sex unless the same distinction is made among those of the opposite sex.

*Knott*, 527 F.2d at 1250–51.

While Fareway's personal grooming code makes such a classification, "sex-plus" discrimination has traditionally been applied to employment policies which discriminate on the basis of (1) immutable characteristics, (2) characteristics which are changeable but involve fundamental rights such as child bearing or marriage, and (3) characteristics which are changeable but which considerably affect employment opportunities given to one sex. Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 457 (3d ed.1996).

Wearing an ear stud is not an immutable characteristic. Pecenka can remove his ear stud or cover it with a bandage. Pecenka does not contend wearing an ear stud involves a fundamental right. Nor does he contend that the unwritten personal grooming code perpetuates a sexist or chauvinistic attitude in employment that significantly affects his employment opportunities. We therefore conclude Fareway's unwritten personal grooming code prohibiting males but not females from wearing earrings or studs is not unlawful discrimination within the "sex-plus" analysis.

## VI. Disposition.

In sum, we conclude that an unwritten personal grooming code prohibiting males but not females from wearing earrings or studs is not unlawful sex discrimination within the meaning of Title VII or the ICRA. Because the personal grooming code was not shown to be unlawful discrimination within the meaning of the statutes, it is unnecessary for Fareway to show the existence of a BFOQ. The district court was correct in granting Fareway's motion for summary judgment.

**AFFIRMED.**