**UNITED FARM BUREAU INSURANCE COMPANY, Plaintiff,**

v.

**METROPOLITAN HUMAN RELATIONS COMMISSION, Defendant.**

Civ. No. F 89–252.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 1, 1993.

**324**

Carolyn W. Spengler and Kathleen A. Kilar, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, IN, for plaintiff.

Samuel L. Bolinger, Asst. Atty. Gen., Fort Wayne Metropolitan Human Relations Com'n, Fort Wayne, IN, for defendant.

Stephen M. Dane, Cooper, Straub, Walinski & Cramer, Toledo, OH, for amicus curiae, Nat. Fair Housing Alliance.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on cross-motions for summary judgment filed by the plaintiff and the defendant. All of the issues were briefed by the parties and by various *amici curiae* and the court heard oral arguments on December 17, 1992. The plaintiff and the defendant made supplemental filings on February 16, 1993.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th

Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file," together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511.

■ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-

moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

*Factual and Procedural Background*

The background facts of this case were set out in this court's order of February 3, 1993, and are as follows. On or about June 20, 1989, United Farm Bureau Insurance Company ("Farm Bureau") gave notice to its insured, Richard P. Kesterke ("Kesterke"), that it would not renew his homeowner's insurance policy. Kesterke's policy had been in effect since 1984 and he had made two claims for theft losses, one in April 1987 and the other in January 1989, totaling $2,567.45.

On July 21, 1989, Kesterke filed a Complaint with the Fort Wayne Metropolitan Human Relations Commission ("Metro") and the United States Department of Housing and Urban Development ("HUD") alleging that Farm Bureau committed race discrimination by its act of not renewing his policy. Kesterke (who is white) claimed that Farm Bureau based its decision not to renew his policy on the fact that Kesterke lives in a racially mixed neighborhood with a perceived high crime rate. Such a claim of declining to write insurance (or charging higher rates) for people who live in particular areas is commonly called "redlining".

On August 14, 1989, Metro (which is certified by HUD to file claims and conduct investigations on HUD's behalf) initiated its investigation of Kesterke's Complaint. Farm Bureau filed its Answer to the Complaint on August 17, 1989, denying the charges and contending, *inter alia,* that Metro did not have subject matter jurisdiction over the Complaint. Farm Bureau also filed a Motion for Dismissal on the grounds that Metro lacked subject matter jurisdiction over the Complaint and filed a Motion for Stay of Proceedings pending a ruling on the Motion for Dismissal. On September 5, 1989, Metro denied Farm Bureau's Motion for Stay.

**326**

Metro has not ruled on the Motion for Dismissal.

On October 3, 1989, Farm Bureau filed a Verified Complaint for Injunction and Motion for Temporary Injunction with the Allen Circuit Court. Farm Bureau sought a determination that Metro did not have jurisdiction to investigate Kesterke's Complaint. Farm Bureau also requested that Metro, along with its agents and employees, be enjoined from pursuing an investigation and/or other proceeding concerning Kesterke's Complaint. The Allen Circuit Court granted Farm Bureau a temporary injunction and a hearing on the request for permanent injunction was set for October 11, 1989. Farm Bureau and Metro stipulated that this hearing should be continued and Metro agreed to suspend its investigation until after the hearing. The Allen Circuit Court reset the hearing for November 29, 1989.

On November 6, 1989, Metro filed a Request for Record of Case to be Removed to the United States District Court and on that same date this matter was removed to this court. In response, Farm Bureau filed a Motion to Remand. The parties subsequently stipulated that Metro would not pursue the investigation of Kesterke's Complaint until Farm Bureau's Complaint for Injunction was decided by this court or, in the event of a remand, by the Allen Circuit Court. On May 18, 1990, this court denied Farm Bureau's Motion to Remand, holding that "since Kesterke's complaint against [Farm Bureau] was 'dual filed' under the local ordinance *and under the Fair Housing Act*, the issue of whether [Metro] is properly authorized to conduct an investigation of Kesterke's Fair Housing Act claim turns on an analysis of that federal legislation." Order of May 18, 1990 (emphasis in original).

Farm Bureau filed a Motion for Summary Judgment on March 7, 1990. In support of this Motion, Farm Bureau argued that a complaint alleging discriminatory acts by an insurance company regarding the renewal of a homeowner's policy does not fall within Metro's subject matter jurisdiction. Farm Bureau also argued that HUD, purportedly acting pursuant to the Fair Housing Act, cannot confer jurisdiction onto Metro which

is broader than that provided by state law. Finally, Farm Bureau argued that injunctive relief is proper when an administrative agency is without subject matter jurisdiction over a matter which it seeks to investigate. Metro filed a cross-motion for summary judgment on March 12, 1990, arguing that its jurisdiction over Kesterke's Complaint was proper as a matter of law.

The cross-motions for summary judgment were taken under advisement pending a ruling by the Seventh Circuit Court of Appeals in *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287 (7th Cir.1992), on the issue of whether "redlining" in the insurance business is a form of racial discrimination violating the Fair Housing Act. On October 20, 1992, the Seventh Circuit issued an opinion in which it held that "Section 3604 of the Fair Housing Act applies to discriminatory denials of insurance, and discriminatory pricing, that effectively preclude ownership of housing because of the race of the applicant." *Id.* at 301. Consequently, the Court of Appeals reversed the judgment of the district court to the extent it held that the Fair Housing Act was inapplicable to property and casualty insurance written or withheld in connection with the purchase of real estate. *Id.* at 302.

After additional briefing by the parties and *amici*, this court heard oral argument on the parties' cross-motions for summary judgment on December 17, 1992.

*Discussion*

■ The central issue in this case is whether, pursuant to the Indiana Civil Rights Act, I.C. § 22–9–1–1, *et seq.*, Metro has subject matter jurisdiction to investigate complaints that insurance companies have engaged in prohibited racial discrimination by their alleged practice of redlining. Metro, as a local administrative agency, derives its power and jurisdiction from the statutes and ordinances authorizing and creating the agency. 1 AM.JUR.2d Administrative Law § 70. The powers of an agency do not always come from a single source and may come from the Federal or State Constitution, state statutes, and/or local ordinances. *Id.;*

*Anderson Lumber & Supply Co. v. Fletcher,* 228 Ind. 383, 89 N.E.2d 449 (1950).

Indiana Code § 22–9–1–12.1(b) authorized the City of Fort Wayne to enact an ordinance establishing a local human rights commission, such as Metro. This section provides in pertinent part:

Any city, town or county is hereby authorized to enact an ordinance or ordinances, which may include establishment or designation of an appropriate local commission, office or agency to effectuate within its territorial jurisdiction the public policy of the state as declared in section 2 of this chapter [22–9–1–2] without conflict with any of the provisions of this chapter.

The "public policy of the state" is expressed in I.C. § 22–9–1–2, which provides in pertinent part:

(a) It is the public policy of the state of Indiana to provide all of its citizens equal opportunity for education, employment, access to public conveniences and accommodations and acquisition through purchase or rental of real property including but not limited to housing, and to eliminate segregation or separation based solely on race, religion, color, sex, handicap, national origin or ancestry, since such segregation is an impediment to equal opportunity. Equal education and employment opportunities and equal access to and use of public accommodations and equal opportunity for acquisition of real property are hereby declared to be civil rights.

In an effort to effectuate this public policy, the City of Fort Wayne enacted General Ordinance G21–78. Article III of G21–78 created Metro "to assist in the elimination of discrimination in the City of Fort Wayne," and details Metro's extensive powers and duties. Article IV, Section 2, of G21–78 prohibits discrimination in the sale or rental of housing or other real property, and specifically provides that:

It shall be unlawful for any owner, real estate broker, salesperson, or other person or any agent thereof:

(a) To refuse to sell or rent after making a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, national origin, or handicap;

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, national origin, or handicap....

Farm Bureau argues that neither the specific language of the Indiana Civil Rights Act nor any case law regarding the statute supports Metro's position that it has jurisdiction to investigate claims of insurance redlining.

Section 22–9–1–2 of the Indiana Code, quoted above, is a broad policy statement expressing the desire that all persons in Indiana have equal opportunities to, among other things, acquire real property and housing and be free from segregation. Neither § 22–9–1–2 nor § 22–9–1–12.1(b) detail the powers, duties, or jurisdiction of an agency created by a municipality to further Indiana's broad civil rights policy. Rather, these details are set forth in Fort Wayne General Ordinance G21–78. Article IV, Section 2(a), of G21–78, which prohibits any person from making a dwelling unavailable to any person because of race, clearly furthers Indiana's policy to provide equal housing opportunities.

Nevertheless, Farm Bureau takes the position that the Indiana Legislature did not intend for insurance companies to be governed by the Indiana Civil Rights Act, or by any local ordinance promulgated thereunder. Thus, according to Farm Bureau, if an insurance company refuses to issue a homeowner's insurance policy to a person because of that person's race, or because of the racial characteristics of that person's neighborhood, Metro, the agency charged with the duty of assisting in the elimination of discrimination in the City of Fort Wayne, has no business questioning the practices of the insurance company.

Farm Bureau argues that I.C. § 22–9–1–2 provides for equal opportunities to *acquire* real property and housing and does not provide that persons in Indiana are entitled to equal opportunities to obtain homeowner's insurance. Farm Bureau states, *ipse dixit,* that if property insurance was intended to be

included in the statute, the statute would so specify. Clearly, however, the guarantee of equal opportunities in the acquisition of real property envisions the guarantee that persons can obtain (and retain) homeowner's insurance free from racial discrimination, in order that they may then acquire (and retain) real property. *American Family*, 978 F.2d at 297–98. ("No insurance, no loan; no loan, no house; lack of insurance thus makes housing unavailable.") Obviously, with the rare exception of those who pay cash for the full purchase price of real estate, one cannot purchase real property without securing property insurance because mortgage companies require borrowers to insure the financed property. John P. Wiedemer, *Real Estate Finance* 89–90 (1990). And failure to maintain a homeowner's insurance policy constitutes a default of the borrower's mortgage obligations. *Id.* at 90. Consequently, the denial of homeowner's insurance effectively denies home ownership.

Article III, Section 2, of G21–78 is virtually identical to the relevant portion of the Fair Housing Act, 42 U.S.C. § 3604.[1] The Ordinance is also virtually identical to the relevant portion of the Indiana Fair Housing Act, I.C. § 22–9.5–5–1, which became effective on July 1, 1991.[2] In Indiana, when a state statute is similar to a federal statute, the federal decisions are very persuasive as authority and are given careful consideration by the court interpreting the state statute. *Indiana Civil Rights Comm'n v. Sutherland Lumber*, 394 N.E.2d 949, 954 (Ind.App.1979). In this case the court is called upon to construe a local ordinance that is virtually identical to a federal statute. As the policy of General Ordinance G21–78 is the same as the policy of both the Indiana Civil Rights Act

and the Federal Fair Housing Act (to promote equal opportunity in the acquisition of housing and the elimination of residential segregation), this court will look to federal interpretations of the Fair Housing Act in construing General Ordinance G21–78 and determining the scope of Metro's jurisdiction.

The most recent federal case concerning the applicability of the Fair Housing Act to claims of insurance redlining is *American Family, supra*. As noted earlier in this opinion, in *American Family* the Seventh Circuit held that the Fair Housing Act applies to discriminatory denials of insurance, and discriminatory pricing, that effectively preclude ownership of housing because of the race of the applicant. 978 F.2d at 301. In reaching this holding, the Seventh Circuit first analyzed the affect of the McCarran–Ferguson Act, which provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Court then queried whether the Fair Housing Act invalidated, impaired, or superseded a Wisconsin state law regulating the business of insurance. The Court recognized that Wisconsin law forbids discrimination by casualty insurers on the basis of race, and also generally prohibits "unfair discrimination" in the business of insurance. *Id.* at 295. However, the Court reasoned that "[d]uplication is not conflict" and held that Wisconsin insurance law did not pre-empt the Fair Housing Act because the Wisconsin law did not require redlining, condone that practice, or commit to insurers all decisions about redlining. *Id.* at

---

**1.** 42 U.S.C. § 3604 provides in pertinent part:

It shall be unlawful—
   (a) To refuse to sell or rent after making a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
   (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, sex, familial status, or national origin.

**2.** I.C. § 22–9.5–5–1 provides in pertinent part:

   (a) A person may not refuse to sell or to rent after the making of a bona fide offer, refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of race, color, religion, sex, familial status, handicap, or national origin.
   (b) A person may not discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in providing services or facilities in connection with the sale or rental of a dwelling, because of race, color, religion, sex, familial status, handicap, or national origin.

295, 297. Nor were there any decisions holding that redlining with discriminatory intent (or disparate impact) does not violate Wisconsin law, and no official of Wisconsin appeared in the case to say that a federal remedy under the Fair Housing Act would frustrate any state policy. *Id.* at 297. The Court thus concluded that "[a]lthough the McCarran–Ferguson Act gives states the final word on the regulation of insurance unless Congress specifically overrides their choices, Wisconsin's word is consistent with the Fair Housing Act." *Id.*

Similarly, Indiana insurance law, to some extent, duplicates the provisions of the Fair Housing Act. *See* I.C. § 27–4–1–1 *et seq.* Yet Indiana law, like Wisconsin law, does not require or condone the practice of redlining and Indiana law does not even suggest that race is a permissible factor on which to base decisions to issue, price, or renew homeowner's insurance policies. Rather, I.C. § 27–4–1–4 prohibits insurance companies from "making or permitting any unfair discrimination between individuals of the same class involving essentially the same hazards in the amount of premium policy fees, assessments, or rates charged."

The National Association of Independent Insurers and the National Association of Mutual Insurance Companies (collectively "the Insurance Associations") have filed an *amici curiae* brief. In this brief, the Insurance Associations claim that dual regulation of the insurance industry by HUD and by the Department of Insurance cannot be properly effectuated because the Department of Insurance and HUD have different objectives. Specifically, the Insurance Associations argue that the state insurance law presently prohibits only "unfair discrimination" and this standard is substantially narrower than the prohibition against discrimination which would be read into the Federal Fair Housing Act and which has been applied under other human rights statutes. The Insurance Associations contend that the Fair Housing Act would not permit individuals to be classified as a group, notwithstanding peculiar insurance risks associated with that group, if an effect would be discrimination against a protected class.

As the Seventh Circuit noted in *American Family*, the Supreme Court has not yet decided whether practices with disparate impact violate the Fair Housing Act. 978 F.2d at 290. However, it is obvious that the federal courts are aware that "risk discrimination is not race discrimination" and that efforts by the insurance industry to fully differentiate among risks may produce classifications that effectively discriminate on the basis of race, sex, or some other protected class. Like the Seventh Circuit in *American Family*, this court has not been called upon to decide whether a plaintiff who has based a cause of action on the Fair Housing Act (or a similarly worded statute or ordinance) is required to prove disparate treatment, *i.e.* intentional discrimination, and not merely prove disparate impact. At this point, this court is only deciding whether Indiana insurance law conflicts with the Fair Housing Act. For the foregoing reasons, the court finds that there is no conflict and thus General Ordinance G21–78 may be interpreted as the federal courts have interpreted the Fair Housing Act, subject to the broad policy statement of the Indiana Civil Rights Act.

In *American Family*, the Seventh Circuit held that under the Fair Housing Act a plaintiff may bring a cause of action against an insurance company for alleged redlining since redlining impermissibly precludes ownership of housing due to the race of the applicant. This holding makes it clear that Metro has jurisdiction to investigate claims of alleged redlining. Consequently, this court holds, as a matter of law, that the Fort Wayne Metropolitan Human Relations Commission has jurisdiction pursuant to General Ordinance G21–78 and I.C. §§ 22–9–1–2, 22–9–1–12.1(b) to investigate complaints that insurance companies have engaged in prohibited racial discrimination by their alleged practice of redlining.

### Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment is hereby DENIED and the defendant's motion for summary judgment is hereby GRANTED.